1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LISA GROCHOWSKI, on behalf of
herself and others similarly situated,

                Plaintiff,

     v.

DANIEL N. GORDON, P.C., and
MIDLAND FUNDING, LLC,

               Defendants.

C13-343 TSZ

ORDER

THIS MATTER comes before the Court on motions for summary judgment brought by defendant Daniel N. Gordon, P.C., docket no. 60, and defendant Midland Funding, LLC, docket no. 57.  Having reviewed all papers filed in support of, and in opposition to, each motion, the Court enters the following order.

**Background**

On July 30, 2010, Capital One Bank (USA), N.A. ("Capital One") "charged off" debt in the amount of $5,025.54 owed to it by plaintiff Lisa Grochowski, formerly known as Lisa Wallace.  Newton Decl. at ¶¶ 5 & 9, Ex. A to Radbil Decl. (docket no. 66-1); *see also* Complaint at ¶¶ 21-24 (docket no. 1).  According to Deborah Newton, Senior

1    Accounting Coordinator for Capital One, a "charge off" occurs when a creditor "is faced

2    with a delinquent loan of such severity that it must absorb the amount of the debt, at least

3    temporarily, in order to clear the balance from its ledger."  Newton Decl. at ¶ 5.  On the

4    last business day of each month, Capital One systematically "charges off" accounts that

5    have been delinquent for 120 or more days.  *Id.* at ¶ 6.  After "charging off" plaintiff's

6    debt, Capital One took a tax deduction for the balance of the debt, and then sold the debt

7    to Equable Ascent Financial; Capital One recognized income from this sale on August

8    16, 2010.  *Id.* at ¶¶ 14 & 15; *see id.* at ¶ 17; *see also* Complaint at ¶ 31 & Ex. A.

9         Equable Ascent Financial in turn sold the debt to defendant Midland Funding,

10   LLC ("Midland") on May 14, 2012.  Minford Dep. at 14:16-15:21, Ex. C to Rivera Decl.

11   (docket no. 58-1).  On June 1, 2012, Midland Credit Management, Inc. ("MCM"), which

12   is not a party to this case, sent a notice to plaintiff indicating that Midland had acquired

13   the Capital One debt, stating that the current balance was $5,025.54, and announcing a

14   payment due date of July 16, 2012.  Ex. B to Complaint (docket no. 1-2).  The notice

15   advised plaintiff that "[b]ecause of interest, late charges, and other charges that may vary

16   from day to day, the amount due on the day you pay may be greater," and it provided a

17   telephone number through which plaintiff could obtain an exact payoff amount or further

18   information.  *Id.*

19        The notice also included the statutorily required warning that "[u]nless you notify

20   MCM within thirty (30) days after receiving this notice that you dispute the validity of

21   the debt, or any portion thereof, MCM will assume this debt to be valid."  *Id.*; *see* 15

22   U.S.C. § 1692g(a)(3).  In addition, the notice contained the following language mandated

23

ORDER - 2

by law:  "If you notify MCM, in writing, within thirty (30) days after receiving this notice

that the debt, or any portion thereof, is disputed, MCM will obtain verification of the

debt," and "[i]f you request, in writing, within thirty (30) days after receiving this notice,

MCM will provide you with the name and address of the original creditor."  Ex. B to

Complaint; *see* 15 U.S.C. §§ 1692g(a)(4)&(5).  MCM sent a reminder notice to plaintiff

on July 4, 2012, reciting the same balance and the same payment due date as the initial

notice.  Ex. C to Complaint (docket no. 1-3).  Both notices indicated that the accrued

interest was $0.00 and that the interest rate was 0%.  Exs. B & C to Complaint.  In this

lawsuit, plaintiff makes no claim that either notice issued by MCM was deficient or failed

in any respect to comply with the requirements of the Fair Debt Collection Practices Act

("FDCPA").

On September 24, 2012, defendant Daniel N. Gordon, P.C. (the "Gordon Firm"), a

law firm located in Eugene, Oregon, sent a letter to plaintiff, indicating that it had "been

retained with the authority to file a lawsuit" against her, but that "at the time of the

writing of this letter, no decision has been made whether or not we will file a lawsuit."

Ex. D to Complaint (docket no. 1-4).  The letter further stated:

> Demand is hereby made upon you for payment in the sum of $6325.85,
> which sum may include principal and interest.  Interest may continue to
> accrue at the state statutory rate until the balance is paid in full.

*Id.*  The letter made clear that "no attorney has personally reviewed the particular

circumstances of your account," and that the communication "is from a debt collector"

and constituted "an attempt to collect a debt."  *Id.*

1    Plaintiff commenced this putative class action on February 22, 2013.  The

2   gravamen of her claims under federal and state law is that Midland had no right to charge

3   interest at the state statutory rate, and that the Gordon Firm's correspondence with her

4   therefore violated various provisions of the FDCPA and was "unfair or deceptive" within

5   the meaning of Washington's Consumer Protection Act ("CPA").  Both defendants move

6   for summary judgment as to the merits of plaintiff's claims concerning the accrual of

7   interest, and Midland further argues that it is not a "debt collector" within the meaning of

8   the FDCPA and is not vicariously liable for the actions of the Gordon Firm.  The Court

9   addresses this latter issue first, before discussing the merits of plaintiff's claims.

10   **Discussion**

11   **A.    Standard for Summary Judgment**

12    The Court shall grant summary judgment if no genuine issue of material fact exists

13   and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

14   The moving party bears the initial burden of demonstrating the absence of a genuine issue

15   of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if

16   it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty*

17   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

18   adverse party must present affirmative evidence, which "is to be believed" and from

19   which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257.  If the

20   record, however, taken as a whole, could not lead a rational trier of fact to find for the

21   non-moving party, summary judgment is warranted.  *See Celotex*, 477 U.S. at 322.

22

23

ORDER - 4

1    **B.    Claims Against Midland**

2         In moving for summary judgment, Midland contends that it is not a "debt

3    collector" within the meaning of the FDCPA and is therefore not subject to the provisions

4    of the statute.  This argument lacks merit.  Because Midland acquired plaintiff's debt

5    after it was in default, Midland is a "debt collector" as defined in the FDCPA.  _See_

6    _Bridge v. Ocwen Fed. Bank, FSB_, 681 F.3d 355, 362 (6th Cir. 2012) ("the definition of

7    debt collector . . . includes any non-originating debt holder that either acquired a debt in

8    default or has treated the debt as if it were in default at the time of acquisition"); _Ruth v._

9    _Triumph P'ships_, 577 F.3d 790, 797 (7th Cir. 2009) ("a party that seeks to collect on a

10   debt that was in default when acquired is a debt collector under the FDCPA, 'even though

11   it owns the debt and is collecting for itself'"); _Oppong v. First Union Mortg. Corp._, 215

12   Fed. Appx. 114, 118 (3d Cir. 2007) (the "definition of 'debt collector' excludes creditors

13   who attempt to collect their own debts, but does not exclude an entity . . . who has

14   acquired a debt that was already in default" (citing _Pollice v. Nat'l Tax Funding, L.P._,

15   225 F.3d 379 (3d Cir. 2000))); _Hernandez v. Midland Credit Management, Inc._, 2007

16   WL 2874059 at *15-*17 (N.D. Ill. Sep. 25, 2007); _see also_ 15 U.S.C. §§ 1692a(4) &

17   (6)(F).

18        Plaintiff, however, has not pleaded and has not presented any evidence of a direct

19   action taken by Midland that violated the FDCPA.  Instead, plaintiff's claims against

20   Midland are premised on the theory that Midland is vicariously liable for the conduct of

21   the Gordon Firm.  In support of this proposition, plaintiff offers a copy of the Collection

22   Agreement dated October 6, 2006, between MCM and the Gordon Firm, and she argues

23

1   that "MCM controlled nearly every aspect of [the Gordon Firm's] conduct regarding its

2   efforts to collect Ms. Grochowski's debt."  Pla. Resp. at 5 (docket no. 66); Ex. B to

3   Radbil Decl. (docket no. 66-2).  MCM, however, is not a party to this action, and plaintiff

4   has provided no basis for imputing to Midland any principal/agent or attorney/client

5   relationship between MCM and the Gordon Firm.[1]  At best, Midland is a third-party

6   beneficiary of the contract between MCM and the Gordon Firm.  Collection Agr. at p. 1,

7   Ex. B to Radbil Decl. (docket no. 66-2).  Such beneficiary status is insufficient to give

8   rise to vicarious liability, and Midland's motion for summary judgment is GRANTED in

9   part.  Plaintiff's claims against Midland are DISMISSED with prejudice.

10  **C.**     **Claims Against the Gordon Firm**

11         Plaintiff contends that, in "charging off" plaintiff's debt, Capital One waived its

12  right to collect interest at the contractual rate and, as a result, Midland is not entitled to

13  interest at the state statutory rate.  The Court is persuaded that the "charge off" itself did

14  not operate to waive interest at the state statutory rate,[2] but the Court remains uncertain

15  _____

16  [1] The case cited by plaintiff, _Fox v. Citicorp Credit Servs., Inc.,_ 15 F.3d 1507 (9th Cir. 1994), illustrates
    the Court's point.  In _Fox_, the plaintiffs defaulted on credit card debt owed to Citibank.  Citibank referred

17  the matter for collection to Citicorp Credit Services, Inc. ("Citicorp").  Citicorp retained the services of an
    attorney, who instituted suit in a manner that violated the FDCPA's venue provision, 15 U.S.C. § 1692i.

18  The Ninth Circuit held that Citicorp was vicariously liable for the attorney's actions.  15 F.3d at 1516.
    Citibank, however, was not even named as a defendant.  In this case, Midland is analogous to Citibank,

19  while MCM is more akin to Citicorp.  Plaintiff has not explained how the separate corporate identities of
    Midland and MCM may be ignored.

20  [2] As successor assignee, Midland acquired only the rights Capital One had when it sold plaintiff's debt to
    Equable Ascent Financial.  _See, e.g., Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.,_ 90 Wn.2d

21  195, 198, 579 P.2d 1341 (1978) (an assignee "stands in [the assignor's] shoes, but acquires no right in
    excess of what the [assignor] had to transfer").  In Washington, a party is entitled to prejudgment interest

22  when the amount due is "liquidated."  _Weyerhaeuser Co. v. Commercial Union Ins. Co.,_ 142 Wn.2d 654,
    685, 15 P.3d 115 (2000).  An amount due is "liquidated" when it may be computed "with exactness,
    without reliance on opinion or discretion."  _Id._  When the parties have not agreed in writing to a different

23

whether Midland effectively waived interest at the state statutory rate when MCM, acting as Midland's servicer, sent two different notices to plaintiff indicating that the accrued interest was $0.00 and the interest rate is 0%.[3]  _See_ Exs. B & C to Complaint (docket nos. 1-2 & 1-3).  Moreover, even assuming that Midland was entitled to charge interest at the state statutory rate, the Court is not satisfied that such interest would legally have run from July 30, 2010, the date of Capital One's "charge off," _see_ Aylworth Dep. at 101:5-11 (docket no. 52), rather than from May 14, 2012, the date when Midland acquired plaintiff's debt.  The parties have not addressed either of these issues, and the Court therefore DEFERS ruling on the Gordon Firm's motion for summary judgment.  The parties are DIRECTED to file supplemental briefs, not to exceed ten (10) pages in length, regarding these two subjects, on or before May 16, 2014.

---

rate, the rate of prejudgment interest is statutorily set at twelve percent (12%) per annum.  _Wright v. Dave Johnson Ins. Inc._, 167 Wn. App. 758, 775-76, 275 P.3d 339 (2012); _see_ RCW 19.52.010(1).  Contrary to plaintiff's assertion, Capital One's decision to forego the contractual rate of interest did not relinquish its right to seek prejudgment interest at the statutory rate.  _See Stratton v. Portfolio Recovery Assocs., LLC_, 2013 WL 6191804 at *2-*4 (E.D. Ky. Nov. 26, 2013); _see also Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co._, 32 Wn. App. 32, 46-47, 645 P.2d 1122 (1982) (holding that a bank, which "charged off" uncollectible loans, and sought to recover from fidelity bonds issued to cover losses resulting from dishonest or fraudulent acts of its employees, was entitled to prejudgment interest running from the date of "charge off" with regard to the balance outstanding as of such date); _compare Cavalry SPV I, LLC v. Desrosiers_, 2010 WL 4227033 (Conn. Sup. Ct. Sep. 20, 2010) (awarding to the assignee of the company issuing the credit card at issue, which had "charged off" and sold the account, prejudgment interest at the statutory rate from the date of the charge-off to the date of the bench trial).

[3] The decision to add interest at the state statutory rate was apparently made unilaterally by the Gordon Firm.  _See_ Aylworth Dep. at 102:8-16, Ex. H to Radbil Decl. (docket no. 52) & Ex. A to Rivera Decl. (docket no. 58-1) ("Q. Did Midland specifically authorize DNG to collect an amount other than $5,025.54? A. No.  Q. Did Midland specifically direct DNG to collect any interest on Ms. Grochowski's balance? A. No. We did as lawyers do, we exercised our own independent legal judgment, determined that our client had a right to ask for that, and we asked for that.").

1   **Conclusion**

2          For the foregoing reasons, the Court ORDERS:

3          (1)      Midland Funding, LLC's motion for summary judgment, docket no. 57, is

4   GRANTED in part as to vicarious liability, and plaintiff's claims against Midland

5   Funding, LLC are DISMISSED with prejudice;

6          (2)      Daniel N. Gordon, P.C.'s motion for summary judgment, docket no. 60, is

7   DEFERRED and RENOTED to May 16, 2014; the parties shall file supplemental briefs

8   on or before the new noting date; and

9          (3)      Plaintiff's motion to certify class, docket no. 47, is RENOTED to May 16,

10  2014.

11         IT IS SO ORDERED.

12         Dated this 17th day of April, 2014.

13

14         _____
           THOMAS S. ZILLY
15         United States District Judge

16

17

18

19

20

21

22

23

ORDER - 8