1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

7

8

9

10

11

LISA GROCHOWSKI, on behalf of
herself and others similarly situated,

Plaintiff,

v.

DANIEL N. GORDON, P.C., and
MIDLAND CREDIT MANAGEMENT,
INC.,

Defendants.

C13-343 TSZ

ORDER

12

13

14

15

16

17

18

19

        THIS MATTER comes before the Court on (i) a Rule 12(b)(6) motion to dismiss

brought by defendant Midland Credit Management, Inc. ("MCM"), docket no. 129, and

joined by defendant Daniel N. Gordon, P.C. (the "Gordon Firm"), docket no. 131,

(ii) a motion for class certification brought by plaintiff Lisa Grochowski, docket no. 133,

which was later revised, docket no. 134-2, and (iii) a motion for preliminary approval of a

class action settlement brought jointly by plaintiff and MCM, docket no. 144.  Having

reviewed all papers filed in support of and in opposition to each motion, the Court enters

the following order.

20

**Background**

21

22

23

        Plaintiff commenced this putative class action on February 22, 2013, against the

Gordon Firm and Midland Funding, LLC ("Midland"), asserting one or more claims

under each of five different subsections of the Fair Debt Collection Practices Act ("FDCPA") and two claims under Washington's Consumer Protection Act ("CPA").  The Court granted Midland's motion for summary judgment because plaintiff had provided no evidence to support either direct or vicarious liability on the part of Midland.  *See* Order at 5-6 (docket no. 88); Minute Order at ¶ 1 (docket no. 91).  The Court also granted in part the Gordon Firm's motion for summary judgment, dismissing Count IV of the Complaint, which alleged violation of 15 U.S.C. § 1692f(1), as well as portions of each of the other five counts of the Complaint.  *See* Minutes (docket no. 107); Tr. at 32-37 (Aug. 14, 2014) (docket no. 110).

Plaintiff subsequently sought and was granted leave to amend her complaint.  *See* Minute Order (docket no. 122).  The Amended Complaint joined MCM as a defendant in this matter and reduced the number of claims to essentially two, namely (i) an FDCPA claim against both MCM and the Gordon Firm, which is brought under three different provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e(2)(A), (5), and (10), and pleaded as Counts I, II, and III of the Amended Complaint, and (ii) a CPA claim against only the Gordon Firm, which is Count IV of the Amended Complaint.

The FDCPA claim is premised on the following allegations.  Plaintiff obtained a loan from Capital One Bank (USA), N.A. ("Capital One") on which she defaulted.  *See* Am. Compl. at ¶¶ 17 & 19 (docket no. 123).  Capital One "charged off" the debt,[1] in

---

[1] Federal regulations require that a financial institution "charge off" closed-end and open-end retail loans after they have been delinquent for 120 days or 180 days, respectively, thereby removing them from the institution's books as assets.  Fed. Fin. Insts. Examination Council, Uniform Retail Credit Classification

1   the amount of $5,025.54, and sold it to Equable Ascent Financial, LLC ("Equable").  *Id.*

2   at ¶¶ 20 & 22.  Equable unsuccessfully attempted to collect $5,025.54 from plaintiff and

3   then sold the debt to Midland.  *Id.* at ¶¶ 24-26.  MCM, acting on behalf of Midland, also

4   failed to collect from plaintiff, and then turned to the Gordon Firm for assistance.  *See id.*

5   at ¶¶ 36-37 & 42-44.  MCM's correspondence with plaintiff indicated that the accrued

6   interest was $0 and the interest rate was 0%.  *See id.* at ¶¶ 39-41; *see also* Exs. B & C to

7   Compl. (docket nos. 1-2 & 1-3).  In contrast, the Gordon Firm's "dunning letter"[2] to

8   plaintiff indicated that the amount due was $6,325.85, which included interest at the rate

9   of twelve percent (12%) per annum from the date of Capital One's "charge off" of the

10  debt, which was July 30, 2010.  *See* Am. Compl. at ¶¶ 50-52.

11        Plaintiff's FDCPA claim is based on a theory that either Equable or Midland,

12  through its agent MCM, waived or is equitably estopped from charging interest at the rate

13  set forth by a Washington statute.[3]  Plaintiff contends that, as a result of such alleged

14  waiver or equitable estoppel, the Gordon Firm's "dunning letter" violated the FDCPA by

15  improperly including interest in the balance owed by plaintiff.  The Court previously

16

---

17  & Account Mgmt. Policy, 65 Fed. Reg. 36903-01 (June 12, 2000); *see also Simkus v. Cavalry Portfolio

18  Servs., LLC*, 2012 WL 1866542 at *1 (N.D. Ill. May 22, 2012).

19  [2] The term "dun" is both a verb, meaning "to make persistent demands upon (as for money)," and a noun referring to "an urgent request" or "a demand for payment."  Webster's Third New Int'l Dictionary 701

20  (1981).  The substance of the Gordon Firm's "dunning letter" to plaintiff is described in the Court's Order entered April 17, 2014, docket no. 88, and a copy of the Gordon Firm's "dunning letter" is attached as Exhibit D to the original Complaint.

21  [3] RCW 19.52.010(1) provides in relevant part:  "Every loan or forbearance of money, goods, or thing in

22  action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties."

23

ORDER - 3

ruled that the issues of waiver and equitable estoppel involve questions of fact that must

be resolved by a jury.  Tr. at 34 (Aug. 14, 2014) (docket no. 110).  At the time, however,

MCM was not yet a party, and after being joined as a defendant, MCM moved to dismiss

on the ground that the Amended Complaint did not sufficiently plead facts to support a

finding of waiver or equitable estoppel.  The Gordon Firm joined MCM's motion,[4] and it

is now ripe for the Court's consideration.

      Unlike her FDCPA claim, plaintiff's CPA claim involves only the Gordon Firm's

alleged operation as an "out-of-state collection agency" without the requisite license.[5]

The Gordon Firm has moved to dismiss plaintiff's CPA claim for lack of subject matter

jurisdiction.  The motion assumes that the three counts of the Amended Complaint

brought under federal law will be dismissed, and asks the Court to decline to exercise

supplemental jurisdiction over plaintiff's state law claim.  See 28 U.S.C. § 1367(c).  For

---

[4] Plaintiff asserts that the Gordon Firm's joinder in MCM's Rule 12(b)(6) motion is untimely and inappropriate.  The Court disagrees.  When plaintiff was granted leave to amend, the Gordon Firm was advised by the Court that it could test the new pleading by dispositive motion.  See Minute Order at ¶ 1(c) (docket no. 122).  The Gordon Firm's joinder was timely filed, and plaintiff had ample opportunity to respond to the motion.  See Minute Order at ¶ 1 (docket no. 143) (renoting the Rule 12(b)(6) motion).

[5] Operating as an "out-of-state collection agency" without the requisite license is per se an "unfair act or practice" or "unfair method of competition" for purposes of the CPA.  RCW 19.16.440.  An "out-of-state collection agency" is defined as "a person whose activities within this state are limited to collecting debts from debtors located in this state by means of interstate communications . . . from the person's location in another state on behalf of clients located outside of this state, but does not include any person who is excluded from the definition of the term 'debt collector'" under the FDCPA.  RCW 19.16.100(10).  Under the FDCPA, an individual "serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt" does not qualify as a debt collector.  15 U.S.C. § 1692a(6)(D).  According to the Gordon Firm, the class definition that plaintiff proposes in connection with her CPA claim fails to exclude from the class persons as to whom the Gordon Firm's debt collection activities were limited to purely legal services as to which it was not required to be licensed as an "out-of-state collection agency."  This issue is rendered moot by the Court's ruling, see infra pp. 13-16, that plaintiff has not satisfied the commonality and predominance requirements with respect to her putative class claim under the CPA.

ORDER - 4

the reasons discussed below, however, a portion of plaintiff's FDCPA claim will remain

in the case, and the Gordon Firm's motion to dismiss plaintiff's CPA claim is therefore

DENIED as moot.

Plaintiff seeks to have the following three classes certified:  (i) all persons located

in Washington to whom MCM sent a debt collection letter indicating that accrued interest

was $0 and/or the interest rate was 0% and from whom the Gordon Firm attempted,

during the Class Period,[6] to collect on the debt; (ii) all persons located in Washington

from whom MCM attempted to collect on a debt acquired by either Midland or MCM

from Equable pursuant to an agreement dated April 19, 2012, the balance of which did

not include any post "charge off" interest, and from whom the Gordon Firm later

attempted, during the Class Period, to collect on the debt; and (iii) all persons located in

Washington from whom the Gordon Firm attempted, during the Class Period[7] and while

not licensed as an "out-of-state collection agency," to collect on a debt.

With respect to the first class and the claim under the FDCPA, MCM and plaintiff

have reached a settlement, which does not include the Gordon Firm,[8] and they have asked

the Court for preliminary approval of their agreement, pursuant to which MCM will

---

[6] The limitations period for a claim under the FDCPA is one year, 15 U.S.C. § 1692k(d), and thus, the Class Period begins on February 22, 2012, and runs until February 22, 2013, when plaintiff initiated this lawsuit.

[7] With respect to her CPA claim, plaintiff proposes the same Class Period as for her FDCPA claim, i.e., from February 22, 2012, to February 22, 2013.  The Gordon Firm became licensed as a Washington collection agency on February 5, 2013.  Aylworth Decl. at ¶ 11 (docket no. 61).  Thus, the Class Period for the CPA claim ends on February 5, 2013, and not February 22, 2013.

[8] A settlement between MCM and plaintiff might, however, preclude plaintiff from pursuing either an individual or a class claim against the Gordon Firm for the same violation of the FDCPA.

ORDER - 5

1    establish a common fund totaling $25,000, of which plaintiff would receive $4,000.

2    Settlement Agr. at ¶¶ 4.1-4.2, Ex. A to Mtn. (docket no. 144).  The other class members

3    would each receive a pro-rata share of the common fund, and plaintiff's attorney's fees

4    and costs would be between $40,000 and $67,500, as determined by agreement of the

5    parties or, if necessary, by mediator Paris Kallas.  _Id._ at ¶¶ 4.1 & 4.3.  MCM and plaintiff

6    represented in their joint motion that the first class has 29 members.  In response, the

7    Gordon Firm has indicated that the number of potential class members is only 13.[9]  In her

8    reply, which MCM did not join, plaintiff suggests a different definition of the class and

9    asks the Court to certify the first class regardless of whether it has 29 or 13 members.

10           As to the second class, plaintiff estimates that the number of members is 71, but

11   she does not clarify whether any of these individuals are also members of the first or third

12   class, or indeed whether she is even a member of the second class.[10]  The Gordon Firm

13   indicates that all of the debts sold by Equable to Midland originated with Capital One and

14   that, during the Class Period, the Gordon Firm sent "dunning letters" to only 18 people in

15   Washington relating to debts "charged off" by Capital One and eventually acquired by

16   Midland.  In reply, plaintiff states that the second class is not limited to individuals whose

---

[9] Of those 13 individuals, the Gordon Firm received payment on one account, pursuant to a settlement with that particular debtor. Aylworth Decl. at ¶ 3 (docket no. 141).  Whether that debtor paid interest has not been disclosed by the parties, and plaintiff has not explained how that debtor and she are similarly situated.

[10] Plaintiff's debt was sold by Equable to Midland on May 14, 2012.  _See_ Order at 2 (docket no. 88) (citing Minford Dep. at 14:16-15:21, Ex. C to Rivera Decl. (docket no. 58-1)).  Whether or not this sale relates to the agreement dated April 19, 2012, between Equable and Midland or MCM, which is referenced in the proposed definition for the second class, is unclear.

ORDER - 6

1  debts originated with Capital One.  Contrary to plaintiff's suggestion, however, a broader

2  class would not be appropriate because plaintiff would not be a suitable representative for

3  persons who borrowed from other creditors, which might have used loan or credit terms

4  different from those of Capital One.  *See* *Simkus v. Cavalry Portfolio Servs., LLC*, 2014

5  WL 1775666 at *1 (N.D. Ill. May 5, 2014) (reciting the following language from Bank of

6  America's cardholder agreement:  "failure to exercise any rights . . . will not waive any of

7  our rights in the future").

8      In connection with the third class, plaintiff represents that 6,450 Washington

9  residents are potential class members.  The Gordon Firm contends that, with respect to

10 plaintiff's CPA claim, individual issues predominate because the elements of injury and

11 causation cannot be decided on a class-wide basis.  Having made such argument, the

12 Gordon Firm does not offer any estimate of the size of an appropriately tailored class for

13 plaintiff's CPA claim.

14 **Discussion**

15 **A.      Rule 12(b)(6) Motion to Dismiss**

16     Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

17 provide detailed factual allegations, it must offer "more than labels and conclusions" and

18 contain more than a "formulaic recitation of the elements of a cause of action."  *Bell Atl.*

19 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must indicate more than

20 mere speculation of a right to relief.  *Id.*  When a complaint fails to adequately state a

21 claim, such deficiency should be "exposed at the point of minimum expenditure of time

22 and money by the parties and the court."  *Id.* at 558.  A complaint may be lacking for one

23

1    of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

2    cognizable legal claim.  _Robertson v. Dean Witter Reynolds, Inc._, 749 F.2d 530, 534 (9th

3    Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the

4    plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  _Usher v._

5    _City of Los Angeles_, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is

6    whether the facts in the complaint sufficiently state a "plausible" ground for relief.

7    _Twombly_, 550 U.S. at 570.  If the Court considers matters outside the complaint, it must

8    convert the motion into one for summary judgment.  Fed. R. Civ. P. 12(d).  If the Court

9    dismisses the complaint or portions thereof, it must consider whether to grant leave to

10   amend.  _Lopez v. Smith_, 203 F.3d 1122, 1130 (9th Cir. 2000).

11           Plaintiff's FDCPA claim turns on whether Equable and/or Midland, through its

12   agent MCM, waived or is equitably estopped from charging interest at the statutory rate.

13   The Gordon Firm contends that the Amended Complaint fails to allege sufficient facts

14   from which a waiver could be found or based on which equitable estoppel could be

15   imposed.  With respect to Equable, the Court agrees.  The Amended Complaint alleges

16   merely that Equable acquired plaintiff's debt from Capital One, unsuccessfully attempted

17   to collect the principal balance from plaintiff, and then sold the debt to Midland.  The

18   Amended Complaint contains no assertion that Equable voluntarily and intentionally

19   relinquished, and therefore waived, the right to charge interest at the statutory rate, and it

20   provides no facts from which such voluntary and intentional relinquishment might be

21   inferred.  _See Buchanan v. Switzerland Gen. Ins. Co._, 76 Wn.2d 100, 108, 455 P.2d 344

22

23

ORDER - 8

1  (1969); _Dombrosky v. Farmers Ins. Co. of Wash._, 84 Wn. App. 245, 255, 928 P.2d 1127

2  (1996).

3          In addition, with regard to Equable, the Amended Complaint does not plead the

4  elements, let alone the factual allegations, necessary for equitable estoppel, namely

5  (i) an admission or conduct inconsistent with the right to collect interest at the statutory

6  rate; (ii) action by plaintiff on the faith of such admission or conduct; and (iii) injury to

7  plaintiff from allowing Equable or its successor or assignee to contradict or repudiate

8  such admission or conduct.  _See_ _Kessinger v. Anderson_, 31 Wn.2d 157, 170, 196 P.2d

9  289 (1948).  The most the Amended Complaint asserts is that Equable sought payment of

10  the principal balance of the debt.  The Amended Complaint does not allege that Equable

11  made any representation concerning accrued interest, the rate of interest, or an intent to

12  forego interest.

13          In her motion for class certification, plaintiff attempts to rely on a representation

14  made by Equable in an agreement with Midland to sell it a portfolio of delinquent debts.[11]

15  Plaintiff, however, fails to explain how she or any other putative class member would be

16  entitled to use a representation made by Equable to Midland, and not to her or them, to

17  establish waiver or equitable estoppel.  In addition, regardless of whether the exact

18  _____

19  [11] According to plaintiff, Equable warranted that "the Current Balance on each Account does not include
any post charge-off interest, fees, or other charges."  Mtn. at 3 (docket no. 134-2).  The Gordon Firm
20  counters that Equable actually represented as follows:  "Except for the Accounts represented by the
customer codes set forth on Schedule 3.8 and identified by the 'Customer' field in the Purchased
21  Accounts File, the Current Balance on each Account does not include any post charge-off interest, fees
or other charges accrued by Seller or, to Seller's Knowledge, any post charge-off interest, fees or other
22  charges accrued by any Original Creditor or Previous Seller."  Resp. at 11 (docket no. 139).  Neither party
has provided a copy of the agreement between Equable and Midland.

23

ORDER - 9

1   language of Equable's representation was as indicated by plaintiff or by the Gordon Firm,

2   the contractual provision does not operate as a waiver by, or basis for equitably

3   estopping, Equable.  The statement in question cannot, as a matter of law, be viewed as

4   informing Midland that Equable had waived interest or that Midland would be unable to

5   collect interest in the future; rather, the representation Equable made to Midland was

6   merely that the amount shown for each account was the principal balance at the time of

7   "charge off."

8        As to the theory that Equable waived or is equitably estopped from charging

9   interest at the statutory rate, plaintiff's FDCPA claim is DISMISSED as to both MCM

10  and the Gordon Firm.  Given the late stage of these proceedings, in which the Court has

11  already issued two rulings on dispositive motions and the deadlines for amending

12  pleadings and completing discovery have expired, _see_ Minute Orders (docket nos. 109 &

13  113), this dismissal shall be with prejudice.  In light of the dismissal of the portion of

14  plaintiff's FDCPA claim predicated on Equable's conduct, plaintiff's motion to certify,

15  under either Rule 23(b)(2) or Rule 23(b)(3), the class of persons located in Washington

16  whose debt was acquired by either Midland or MCM from Equable pursuant to an

17  agreement dated April 19, 2012, the balance of which did not include any post "charge

18  off" interest, and from whom the Gordon Firm later attempted, during the Class Period,

19  to collect on the debt, is DENIED as moot.

20       With regard to the remaining portion of plaintiff's FDCPA claim, premised on

21  waiver and equitable estoppel relating to Midland, the Court reaches a different result

22  concerning the Gordon Firm's motion to dismiss.  The Amended Complaint references

23

ORDER - 10

correspondence sent to plaintiff by MCM on behalf of Midland in which the accrued

interest was explicitly stated as $0 and the interest rate was represented to be 0%.  Copies

of MCM's letters were attached to the original Complaint.  If MCM's communications

operated as a waiver of or basis for equitably estopping Midland from collecting interest

at the statutory rate, then the Gordon Firm's "dunning letter" to plaintiff (and perhaps

others), which recited a balance owed that included 12% interest, violated the FDCPA.[12]

The Court has previously concluded that plaintiff's allegations concerning MCM's

$0-and-0% statements present a genuine dispute of material fact for trial on the issues of

waiver and equitable estoppel, and the pending motion to dismiss does not persuade the

Court to reconsider this ruling.  The FDCPA claim will therefore remain in the case,

against both the Gordon Firm and MCM, premised on the theory that Midland waived or

is equitably estopped from charging interest at the rate set forth in RCW 19.52.010(1).

### B.    Class Certification

Rule 23 operates as "an exception to the usual rule that litigation is conducted by

and on behalf of the individual named parties only."  _Comcast Corp. v. Behrend_, 133

S. Ct. 1426, 1432 (2013) (quoting _Califano v. Yamasaki_, 442 U.S. 682, 700-01 (1979)).

To maintain a class action, plaintiff must "affirmatively demonstrate" compliance with

Rule 23.  _Id._ (citing _Wal-Mart Stores, Inc. v. Dukes_, 131 S. Ct. 2541, 2551 (2011)).  The

prerequisites of Rule 23 are not mere pleading standards, but rather are evidentiary

---

[12] The Gordon Firm accurately points out that plaintiff is not pleading an affirmative claim for equitable estoppel.  _See_ Reply at 7 (docket no. 149).  Rather, equitable estoppel would simply be plaintiff's defense in an action by Midland to collect interest on the principal balance of the debt Midland acquired from Equable, which originated with Capital One.

1   thresholds.  _Id._  Thus, plaintiff bears the burden of proving, not just simply alleging, that

2   all four requirements of Rule 23(a) are satisfied, _see id._, namely that (1) the class is so

3   numerous that joinder of all members is impracticable; (2) questions of law or fact

4   common to the class exist; (3) plaintiff's claims are typical of the claims of the class; and

5   (4) plaintiff will "fairly and adequately" protect the interests of the class.  Fed. R. Civ.

6   P. 23(a).

7        Plaintiff must also prove that any proposed class qualifies under at least one of the

8   three provisions of Rule 23(b).  Plaintiff in this case pursues class certification under

9   Rule 23(b)(3), which requires plaintiff to show the case involves "questions of law or fact

10  common to class members" that "predominate over any questions affecting only

11  individual members" and as to which "a class action is superior to other available

12  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

13  Plaintiff also alternatively seeks certification under Rule 23(b)(2), which requires

14  plaintiff to demonstrate that the Gordon Firm "has acted or refused to act on grounds that

15  apply generally to the class, so that final injunctive relief or corresponding declaratory

16  relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

17       Commonality, within the meaning of Rule 23, requires plaintiff to demonstrate

18  that the claims of all class members depend on "a common contention" of such nature as

19  "is capable of classwide resolution."  _Wal-Mart_, 131 S. Ct. at 2551.  The test is whether

20  the determination of the truth or falsity of such common contention "will resolve an issue

21  that is central to the validity of each one of the claims in one stroke."  _Id._  "What matters

22  . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of

23

ORDER - 12

a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original, quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)).  The Court must "probe behind the pleadings" and engage in a "rigorous analysis" as to whether the prerequisites for a class action have been satisfied. *Behrend*, 133 S. Ct. at 1432.  The Court's inquiry will necessarily "entail some overlap with the merits" of the underlying claims because class certification considerations are generally "enmeshed" in the factual and legal issues associated with the causes of action being pursued. *Walmart*, 131 S. Ct. at 2551-52; *see also Behrend*, 133 S. Ct. at 1432; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlay with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." (emphasis in original)).

## 1.   Consumer Protection Act Claim

The Court first addresses class certification with respect to the CPA claim, which is asserted against only the Gordon Firm.  To prevail on a CPA claim, a private plaintiff must prove:  (i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) the plaintiff's injury is causally related to the defendant's act or practice.  *See*, *e.g.*, *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 113, 22 P.3d 818 (2001); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986).  For purposes of the CPA, a plaintiff's payment on a valid debt does not

constitute injury with respect to a related unfair or deceptive act or practice by a debt

collector.  *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1115-17 (W.D.

Wash. 2012).

Rather, to satisfy the injury prong of a CPA claim against a debt collector, a

plaintiff must show some other loss resulting from the unfair or deceptive act or practice.

For example, in *Moritz*, the plaintiff had incurred a postage charge of $7.75 in connection

with sending a letter via certified mail to the debt collector (also the Gordon Firm in that

case) in response to its unlicensed collection activities.  895 F. Supp. 2d at 1114-15; *see*

*also* *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 563-65, 825

P.2d 714 (1992) (holding that defending against a collection action and prosecuting a

CPA counterclaim do not amount to "injury" for purposes of the CPA, but that spending

time away from a solo-run business and other hourly-paid work to address the unfair or

deceptive practices was sufficient to send the matter to the jury).

Although plaintiff alleges for herself the type of expense that might qualify as an

injury for purposes of the CPA,[13] the Amended Complaint makes no similar assertions on

---

[13] The Gordon Firm argues that plaintiff's expenses were not proximately caused by its unlicensed debt collection activities.  Plaintiff retained Weisberg & Meyers, LLC ("W&M"), a law firm based in Phoenix, Arizona, formerly with an office in Loon Lake, Washington, to "represent her in connection with several debts."  Meyers Decl. at ¶ 2 (docket no. 27-1); *see* Compl. (docket no. 1).  Plaintiff hired W&M in 2010, *see* Grochowski Dep. at 16:3-4, Ex. A to Johnson Decl. (docket no. 140-1), which was before Equable and MCM attempted to collect from her, and roughly two years before the Gordon Firm sent its "dunning letter."  Thus, plaintiff's decision to retain counsel was unrelated to any conduct on the part of the Gordon Firm.  Plaintiff did, however, forward the Gordon Firm's "dunning letter" to W&M, which in turn sent to the Gordon Firm, via certified mail, a letter disputing the debt.  Meyers Decl. at ¶¶ 5-6; *see* Grochowski Dep. at 21:5-9, 65:13-15, 66:21-23.  Although plaintiff's inability to quantify how much she incurred in postage, facsimile, and similar charges, or the amount of time she spent away from work, *see* Grochowski Dep. at 86:2-87:7, will preclude her from receiving actual or treble damages under the CPA, *see* *Sign-O-Lite*, 64 Wn. App. at 565, 568, whether the expense of forwarding and responding to the "dunning letter"

behalf of the other 6,450 individuals that plaintiff wishes to include in the class.  Instead, plaintiff seems to contend that she need not make any showing concerning the potential merit of the claims of putative class members.  Plaintiff's view ignores the teachings of *Behrend*, *Walmart*, and their progeny, including *Ellis*, which require the Court to assess whether, given the nature of the claim, class-wide resolution of potentially dispositive issues is even possible.

Plaintiff's CPA claim differs from those as to which an assessment of individual injury is unnecessary, for example, claims involving unfair or deceptive acts or practices that resulted in every member of the class incurring a particular expense.  *See Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256 (W.D. Wash. 2009) (challenging "Early Termination Fee" of $200 charged for cancelling Internet service before the end of the subscription period); *see also Riensche v. Cingular Wireless LLC*, 2013 WL 951012 (W.D. Wash. 2013) (challenging a surcharge added to monthly wireless phone service fees, which was used to recoup from customers a pro rata share of the business and occupation tax paid to the State of Washington).  In this case, persons in Washington who received interstate communications during the Class Period from the Gordon Firm might have simply ignored them, or might even have paid the underlying debt they owed, and thereby incurred no injury related to the Gordon Firm's operation without the requisite license.  *See Moritz*, 895 F. Supp. 2d at 1115-17.  Moreover, as is true for plaintiff,

---

constitutes injury causally related to the absence of an "out-of-state collection agency" license is for a jury to decide.

1 putative class members might have been delinquent on a valid debt, and if the Gordon

2 Firm had not been in communication with them during the Class Period, some other

3 entity would likely have been attempting to collect on the debt, but perhaps while

4 appropriately licensed.  Thus, for some, if not all, putative class members, the absence of

5 an "out-of-state collection agency" license bears no causal connection to their receipt of

6 "dunning letters" or similar correspondence from a debt collector.

7    The Court HOLDS that plaintiff has not made, with respect to her CPA claim, the

8 requisite showing  of commonality to warrant certification of a class under Rule 23(b)(3).

9 The individual issues concerning injury and causation predominate over any questions of

10 law or fact common to all putative class members.  The Court is also satisfied that, with

11 regard to the CPA claim, a class action would not be "superior to other available methods

12 for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), and

13 DECLINES to certify the proposed class.

14    Plaintiff's alternative motion to certify a class under Rule 23(b)(2) is likewise

15 DENIED.  The Gordon Firm has already become licensed under Washington law, and

16 plaintiff has not demonstrated that any final injunctive or declaratory relief would be

17 appropriate in connection with her CPA claim.  _See_ Fed. R. Civ. P. 23(b)(2).  Plaintiff's

18 individual claim for damages under the CPA will remain in the case, and the Court will

19 set a trial date after receiving a Joint Status Report from the parties in the form described

20 in the conclusion of this Order.

21

22

23

1

## 2.   <u>Fair Debt Collection Practices Act Claim</u>

2        With regard to the proposed class of persons located in Washington to whom

3  MCM sent a debt collection letter indicating that accrued interest was $0 and/or the

4  interest rate was 0% and from whom the Gordon Firm attempted, during the Class Period,

5  to collect on the debt, plaintiff's motion for class certification and plaintiff's and MCM's

6  joint motion for preliminary approval of class settlement are DENIED without prejudice.

7  The Court is not satisfied that the number and identity of putative class members is

8  known.  In reply to the Gordon Firm's objections to class certification and preliminary

9  approval of class settlement, plaintiff has suggested amending the proposed class

10  definition to limit the putative class members to those whose debts were purchased by

11  MCM from Equable on May 14, 2012.  <u>See</u> Reply at 5 (docket no. 148).  The Court is not

12  persuaded that this additional language addresses the Gordon Firm's concerns.  As

13  indicated throughout the record, Midland is the entity that acquired plaintiff's debt, not

14  MCM.  In addition, contrary to plaintiff's understanding, the Gordon Firm is not

15  disputing the number of individuals whose debts were bought from Equable on May 14,

16  2012; rather, the Gordon Firm is indicating that, of the 29 accounts identified by MCM

17  in discovery,[14] the Gordon Firm engaged in debt collection activities during the Class

18  Period on only 13 of them.  <u>See</u> Aylworth Decl. at ¶ 2 (docket no. 141).

19  _____

20  [14] Whether MCM's figure encompasses everyone in Washington to whom MCM sent a debt collection
letter indicating that accrued interest was $0 and/or the interest rate was 0%, without regard to whether
21  the Gordon Firm later attempted to collect on the debt, is unclear.  To the extent it does, the proposed
class of 29 members could not be certified because plaintiff's claim against MCM is premised solely on
vicarious liability for the activities of the Gordon Firm.  Plaintiff has made no claim that MCM itself
22  violated the FDCPA by issuing letters reciting $0 in accrued interest and/or an interest rate of 0%.

23

1    When a proposed class is small or, in other words, not per se numerous, the

2    following factors must be considered in assessing whether the appropriate way to proceed

3    is joinder, rather than certification of a class:  (i) judicial economy from avoiding

4    multiple actions; (ii) geographic dispersion of proposed class members; (iii) financial

5    resources of proposed class members; (iv) ability of proposed class members to file

6    individual suits; and (v) requests for prospective relief that might affect future class

7    members.  *McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,

8    268 F.R.D. 670, 674 (W.D. Wash. 2010) (indicating that these considerations are

9    generally relevant for putative classes with 40 or less members); *see also* *Marshall v.*

10   *Bonded Adjustment Co.*, 2012 WL 3044246 at *5 (E.D. Wash. July 25, 2012) (citing *Gen.*

11   *Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980) (suggesting that a proposed

12   class of 15 or less does not meet the numerosity requirement)).  Because the parties

13   disagree concerning the number and therefore the identity of potential class members, the

14   Court cannot evaluate these factors and DECLINES to further analyze whether a class

15   should be certified as to the remaining FDCPA claim for either settlement or trial

16   purposes.

17   **Conclusion**

18       For the foregoing reasons, the Court ORDERS as follows:

19       (1)    MCM's Rule 12(b)(6) motion to dismiss, docket no. 129, in which the

20   Gordon Firm joined, docket no. 131, is GRANTED in part and DENIED in part.  The

21   motion is GRANTED as to plaintiff's theory that Equable waived or is equitably

22   estopped from charging interest at the statutory rate, and plaintiff's FDCPA claim is

23

ORDER - 18

DISMISSED with prejudice to the extent it is premised on such theory.  The motion to dismiss is otherwise DENIED.

       (2)     Plaintiff's motion for class certification, docket no. 133, as revised, docket no. 134-2, is DENIED in part with prejudice and DENIED in part without prejudice.

       (3)     Plaintiff's and MCM's motion for preliminary approval of class settlement, docket no. 144, is DENIED without prejudice.

       (4)     The following claims remain for trial:  (i) the FDCPA claim, against both the Gordon Firm and MCM, premised on waiver or equitable estoppel relating to Midland, and (ii) the CPA claim against only the Gordon Firm.  Whether plaintiff may pursue the remaining FDCPA claim on behalf of a class is yet to be determined, but the CPA claim will be solely an individual one for damages and/or attorney's fees and costs, *see supra* n. 13, and not for injunctive or declaratory relief.

       (5)     Within fourteen (14) days of the date of this Order, the parties shall file a Joint Status Report indicating (i) whether plaintiff and MCM intend to file another joint motion for preliminary approval of class settlement and, if so, when; (ii) whether plaintiff intends to file another motion for class certification as to the remaining FDCPA claim against the Gordon Firm and, if so, when; and (iii) when the parties anticipate being ready for trial and how long any trial would last.

       IT IS SO ORDERED.

       Dated this 26th day of May, 2015.

Thomas S. Zilly
United States District Judge